### AUGUSTUS SPIES, TRUSTEE, ETC., v. THE GREENWICH INSURANCE COMPANY.

*Fire insurance—Warranty—Keeping watchman.*

An insurance policy upon a saw-mill contained a warranty that a watchman should be employed about the premises night and day. The assured was operating another mill near by, there being an open space between the two mills of from 425 to 450 feet, which was used for piling lumber. The foreman of the assured, who had charge of piling the lumber, testified that he watched the mill every day down to the time of the fire, and that the men in the yard under him also watched it. And it is held that if it had been the intention of the parties to employ a watchman *on* the premises, or to keep him constantly in the mill, night and day, they would so have stipulated in the policy, and that there was some testimony to go to the jury upon the question whether the warranty was complied with.

Error to Menominee. (Stone, J.) Argued June 27, 1893. Decided October 27, 1893.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Sawyer & Waite (R. W. Barger,* of counsel), for appellant.

*B. J. Brown,* for plaintiff.

LONG, J. November 26, 1890, the defendant issued its policy to James A. Stephenson, receiver of the Peters & Morrison estate, covering $200 upon steam saw and shingle mill, etc., $600 on engines, boilers, etc., and $200 on fixed and movable machinery, etc. Permission was given for necessary alterations and repairs, to run nights, and to light with kerosene, gas, or electric light, and for $40,000

total concurrent insurance on the property. At the time the insurance was effected, the property was occupied and in operation. Subsequently the property ceased to be operated, and became idle, vacant, and unoccupied. Under the terms of the policy these facts rendered the contract of insurance void, unless the company should indorse in writing upon the policy its consent thereto. Mr. Stephenson, then the receiver of the Peters & Morrison property and the local agent of the company, procured the consent of the defendant company to allow its policy to remain in force by the following writing indorsed upon the policy:

"Permission is hereby granted for the property insured under this policy to remain idle and inoperative for a period of three months from this date.

"Warranted by the assured that a watchman shall be employed night and day during the period of this permit.

"To attach to and form a part of policy No. 2,807 of the Greenwich Insurance Co. of New York.

"Dated May 1, 1891."

The property was sold and conveyed by Mr. Stephenson, July 31, 1891, to the plaintiff. Upon the next day the policy was assigned to the plaintiff, and the same form of permission to continue the policy in force for 30 days from September 1, 1891, was indorsed upon the policy, together with a warranty "that a watchman shall be employed about the premises night and day during the continuation of this permit."

September 16, 1891, the premises were destroyed by fire. The defendant company refused to pay the loss, basing its refusal on the ground that the assured did not keep and perform the warranty "that a watchman shall be employed about the premises night and day" from September 1, 1891, up to and at the time of the fire, and plaintiff brought suit. On the trial the court left the question to the jury to determine whether the assured had complied with the terms of the warranty in the policy by keeping

a watchman as therein required, and directing them that
the contract required a watchman to be kept there every
hour of the day and night, and that, if they found the
assured did not do this, he could not recover. The jury
returned a verdict in favor of the plaintiff for the amount
of the policy.

The only question for consideration here is whether there
was any evidence which warranted the court in submitting
this question to the jury. The property consisted in part
of a saw-mill property on the shore of Green Bay, within
the city of Menominee. At the time the plaintiff purchased
this property he owned a saw-mill property near by, which
he was operating, and continued to operate down to the
time of the fire. It was 300 feet from the line between
these properties to the mill of plaintiff on the south, the
space being used for piling lumber. It was from 125 to
150 feet from such boundary line to the mill described in
the policy, this space remaining vacant and unoccupied.
The plaintiff, after making this purchase, claims to have
placed the insured mill during the day-time in charge of
Mr. Frederickson, his yard foreman, instructing him to
watch it, and claims that Frederickson did watch it during
each day down to the time of the fire. Plaintiff also
claims that he employed a competent watchman, who was
in charge of the property during every night, until the
time of the fire, looking after the mill and lumber yard.
There is some evidence tending to show this. Mr. Fred-
erickson testified that he was foreman for the plaintiff in
his yard connected with the south mill, which was running.
This yard was between the two mills. He gave his atten-
tion to the piling of lumber in the yard, to see that it
was properly piled. He was also directed by the plaintiff
to watch the north mill, the one in controversy here. He
claims that he did keep watch there every day down to
the time of the fire, and that the men in the yard under

him were also instructed to watch it, and did watch it. The jury found that he was on watch there every hour in the day. We cannot say from the testimony of this watchman that the warranty to watch the mill was not complied with. It was warranted that a watchman should be employed about the premises night and day. If it had been the intention of the parties to employ a watchman on the premises, or to keep him constantly in the mill, night and day, they would undoubtedly so have written the contract; but this is not the contract. *Au Sable Lumber Co. v. Insurance Co.*, 89 Mich. 407. As was said in *Power v. Insurance Co.*, 8 Phila. 568:

"The word [watchman] is in its very nature loose and indefinite in its meaning, and the law cannot supply this defect by giving a definition, because it is not a technical term of the law, and because the nature of a watchman's functions varies in different places and according to the dangers to which the property is exposed, and even according to the nature and value of the property."

Here the property was adjacent to the other property of the plaintiff; the mill yard was between; a watchman was to be employed about the premises at all times. It is apparent that the jury believed that Mr. Frederickson was about the property at all times during the day, within the meaning of the agreement. There can be no question but the night watchman was there during the night at all hours, under the testimony he gives. There was evidence to go to the jury on the question, and it was fully and fairly submitted.

Judgment affirmed.

McGRATH and MONTGOMERY, JJ., concurred with LONG, J.

GRANT, J. *(dissenting)*. The property insured and subsequently destroyed by fire consisted of a steam saw and shingle mill. At the time the policy was issued the mill

was being operated. The owners failed; the mill was shut down, and left unoccupied. By the terms of the policy such vacancy rendered it void, unless the consent of the insurance company thereto was indorsed upon the policy. Mr. Stephenson, who was the local agent of the defendant, was appointed receiver. He obtained the consent of the company to continue the insurance during a certain period while it remained unoccupied. The condition upon which this consent was obtained and the policy was to be continued in force is as follows: "Warranted by the assured that a watchman shall be employed about the premises night and day during the period of this permit." Plaintiff purchased the property from the receiver, and the like permit and the same condition were indorsed upon the policy. During his receivership Mr. Stephenson employed watchmen as required. Upon the sale to plaintiff Mr. Stephenson asked him if he desired to employ the same watchmen, to which he replied, "No;" that he would put on watchmen of his own.

Upon the trial the defendant introduced no evidence, and upon the plaintiff's own case its counsel requested the court to instruct the jury to render a verdict for it, on the ground that the plaintiff had failed to employ a watchman in accordance with the terms of the policy. The court submitted to the jury the question, as one of fact, whether such watchman had been employed, instructing them as follows:

"If you find from the evidence that a watchman was not employed about the mill insured during every hour of the day from September 1, 1891, until said mill was on fire, then your verdict must be for the defendant."

This instruction was correct if there was any evidence to sustain it. It therefore becomes necessary to state the evidence fully upon this point.

Plaintiff owned a mill, which he was then operating,

-situated about 450 feet from this one to the south. In the mill yard of the one he was operating he had a large number of men employed in hauling, sorting, and piling lumber. No workmen or watchmen were employed in the mill which was destroyed, nor upon the premises belonging thereto. Plaintiff had no man employed during the day to watch this mill, except as some of his employés about the other mill might watch it while engaged in their usual work there. He does not claim that he watched it himself. His testimony on this point is as follows:

" My men were instructed to watch the property during the day-time. The foreman had charge of it. His name is Frederickson.

"Q. You say you instructed him to watch this north mill?

"A. No; I instructed him to have a watch for that mill at all times during the day.

"Q. You told Frederickson to have somebody watch this north mill all the time during the day?

"A. Yes; that is, he had general instructions to that effect.

"Q. When did you give Frederickson those instructions?

"A. At the time we purchased the mill.     *     *     *

"Q. I understand Mr. Frederickson's duties were in the mill yard as foreman?

"A. Yes, sir.

"Q. You instructed him to watch the property?

"A. I instructed him to give instructions to watch the property during the day.

"Q. Did you instruct him to watch the property also?

"A. I instructed him to have the property watched during the day.

"Q. I ask you whether you instructed Frederickson himself to watch the property?

"A. I instructed him to have the property watched."

He further testified that the men to whom he told Frederickson to give these instructions were employed about the south mill; that they were teamsters and pilers of lumber; that their business was to work during the day industriously in piling or hauling or whatever they had to

do; that he hired and paid them for that; and that he did not employ or hire a man to watch around the mill which was burned, during the day, any further than these men did it. In reply to leading questions by his counsel, plaintiff further stated that he was positive the mill was watched, but he could not give the name of a single person, aside from Frederickson, to whom he had ever spoken about watching it. Furthermore, he did not produce a single employé or other person, aside from Frederickson, to give any evidence in regard to the matter. His testimony is therefore valueless, and does not tend to establish the fact, essential to his right of recovery, that he had employed a watchman. We must therefore look to Frederickson's testimony, which is as follows:

"I was foreman for Mr. Spies. He told me to watch the mill there.

"Q. What did you do? Did you watch it?

"A. Yes, sir.

"Q. How long did you watch it?

"A. I watch it since he buy it there.

"Q. You watched it in the day-time until the fire occurred?

"A. Yes, sir.

"Q. Did you have any other men that you gave instructions to watch it?

"A. Yes, sir."

This is all of his direct testimony. On cross-examination he testified that his duties were to look after the men piling the lumber and the truckmen; that he was at work most of the time where they were loading the lumber on the tramway next to Mr. Spies' mill; that his duty was to see that the lumber was piled in good order, to tell the men where to haul it, to attend to sorting it, to see that all of one kind was put on one wagon and all of another kind on another, to see when the wagons were loaded heavily enough, and to tell the men when to go

away with it. He also testified that he was engaged in this general work on the day of the fire.

We think it entirely clear that Mr..Frederickson was not such a watchman as was contemplated by the contract. He does not say that he went upon the premises in dispute at all, nor does he specify a single act of watching. From where he was at work he could not see one side of the mill, nor could he see into it. Boys or tramps might break into it from that side without being seen by him. His entire time was employed at the south mill, and it is not claimed that he left that work for a moment to look after this property. According to plaintiff's own testimony, he did not instruct Mr. Frederickson to watch, but to see that the watching was done by some one else. The burden of proof was upon the plaintiff so show the employment of a watchman. The facts were undisputed, and the question, therefore, became one of law for the court, and not of fact for the jury. Frederickson was engaged in an occupation which evidently required his constant attention. He was not expected to, could not, and did not leave it to walk four or five hundred feet to act as a watchman under this contract. He did not go upon the premises. To hold that plaintiff's action was a fulfillment of his contract would, in our judgment, be contrary to the plain terms of the contract. Can it be. said that the property was watched "every hour during the day," as the court instructed the jury they must find in order to render a verdict for plaintiff? Is a man, engaged constantly in another occupation several hundred feet from a vacant mill, and not on the mill property, such a watchman as these parties contemplated?

The case of *Au Sable Lumber Co v. Insurance Co.*, 89 Mich. 413, does not govern this case. That case, as regards the watchman, was placed upon the ground that "from the time the watchman left in the morning until

he came on again in the evening the mill was in charge of the book-keeper and barn man, whose duty it was to look after and care for the property."

The judgment should be reversed, and a new trial ordered.

HOOKER, C. J., concurred with GRANT, J.